IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **MARION McINTOSH,** *etc.***,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0523-WS-C |
| | ) |
| **PRUDENTIAL INSURANCE** | ) |
| **COMPANY,** *et al.***,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter has been recently transferred to the undersigned's docket, and now comes before the Court on plaintiff's Motion to Remand (doc. 4). The briefing schedule entered by Magistrate Judge Cassady last month has expired, and the Motion is ripe for disposition. Also pending are defendant Prudential Insurance Company's Motion to Dismiss (doc. 7) and Motion to Strike Jury Demand (doc. 9).[1]

**I.     Background.**

Plaintiff, Marion McIntosh, filed suit against Prudential Insurance Company and certain fictitious defendants in the Circuit Court of Wilcox County, Alabama, on September 8, 2016. In his Complaint (doc. 1, Exh. A, at 4-7), McIntosh alleged that he had purchased an insurance policy from Prudential in 1987; that such policy was in full force as of March 19, 2016, when McIntosh's wife died; that the policy by its terms obligated Prudential to pay McIntosh approximately $25,000 upon the death of his spouse; and that Prudential has nonetheless failed and refused to pay any such policy benefits to McIntosh. (*Id.*, ¶¶ 7-10.) On the strength of those

---

[1] No formal briefing schedule was entered with respect to the Motion to Dismiss and Motion to Strike. By operation of the Local Rules, any response that plaintiff might have wished to submit to either motion was due within 14 days of their filing, or by no later than October 28, 2016. *See* Civil L.R. 7(c) ("Unless the Court orders otherwise, the non-movant must file any brief, exhibit, or other paper in opposition to a motion … within fourteen (14) days of service of the motion."). That deadline having lapsed, both the Motion to Dismiss and the Motion to Strike are properly taken under submission at this time.

factual allegations, McIntosh pursues nominally state-law claims against Prudential on theories of breach of contract, fraud and wantonness, through which he seeks to recover the unpaid policy benefits, as well as punitive damages, costs and attorney's fees.

The body of the Complaint provides no insights into the nature of the insurance policy at issue. However, appended to the Complaint as exhibits are policy documents reflecting on their face that the subject policy is a group insurance contract between Prudential and "NEA Members Insurance Trust," providing for certain life insurance benefits based on the certificate holder's attained age at the time of his or her spouse's death. (Doc. 1, Exh. A, at 10.) Those exhibits further show that McIntosh signed a "Life Insurance Enrollment Form" for "The NEA Group Life Insurance Program." (*Id.* at 20-21.) McIntosh also attached to his Complaint a document entitled "Your NEA Insurance Booklet and Certificate," which reads in pertinent part as follows:

> "The purpose of this Summary Plan Description is to inform you about the Plan's structure. This Summary is being furnished to you in compliance with the Employee Retirement Income Security Act of 1974 (ERISA). As a participant in the Plan, you are entitled to certain rights and protections under ERISA. These rights are summarized in this Summary Plan Description."

(*Id.* at 52.) The Summary Plan Description goes on to indicate that "[a]s a participant in the NEA Members Insurance plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA)." (*Id.* at 54.) And it specifies that "ERISA imposes duties on NEA, and the Trustees in their operation of the NEA Life Insurance Plan." (*Id.*) There are thus numerous indications in the documents that the plan was conceived and established as an ERISA plan.

On October 7, 2016, Prudential filed a Notice of Removal (doc. 1), to effectuate removal of this action from Wilcox County Circuit Court to this District Court. As grounds for federal subject matter jurisdiction, Prudential relied on the federal question provisions of 28 U.S.C. § 1331. Even though the Complaint is framed in exclusively state-law terms, Prudential asserted that all of McIntosh's claims were subject to ERISA complete preemption, such that those claims actually arise under federal law despite their facially state-law character.

Plaintiff (by and through counsel) has now filed a Motion to Remand seeking remand of this action to state court for lack of federal jurisdiction. The skeletal Motion, which was not accompanied by a brief, indicates that McIntosh's Complaint raises only "state not federal issues," that "[t]here is no diversity," and that "[t]he Plaintiff is not now nor has ever been an

ERISA based employee." (Doc. 4, ¶¶ 3-5.) Prudential filed a detailed Response (doc. 11) to the Motion to Remand. Despite an opportunity to do so, McIntosh elected not to file a reply.

## II.     Analysis.

### A.     Plaintiff's Motion to Remand.

By statute, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, the test for determining whether a case is removable under § 1331 hinges on the presence or absence of a federal question in the well-pleaded allegations of the complaint. *See, e.g., Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 891 (11th Cir. 2013) ("Where a plaintiff's well-pleaded complaint alleges a cause of action arising under federal law, subject matter jurisdiction exists for a federal court to determine whether the allegations entitle him to relief.").[2] Nowhere on the face of McIntosh's Complaint does he expressly raise a federal question; therefore, if the well-pleaded complaint rule were to apply, then McIntosh would be correct that remand is warranted for want of federal question jurisdiction.

There are, however, certain narrow exceptions to the well-pleaded complaint rule. For purposes of this discussion, the critical exception is the doctrine of complete preemption. "Complete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) (citations omitted). "Complete preemption under ERISA derives from ERISA's civil enforcement provision, § 502(a), which has such extraordinary preemptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 1344 (citation and internal quotation marks omitted); *see also Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d

---

[2]     *See also Lawrence v. Nation*, --- F. Supp.3d ----, 2016 WL 3391153, *9 (M.D. Ala. June 14, 2016) ("Whether a claim 'arises under' a federal law is generally determined by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.") (citations and internal quotation marks omitted); *Brown v. Endo Pharmaceuticals, Inc.*, 38 F. Supp.3d 1312, 1318 (S.D. Ala. 2014) ("The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint.") (citation omitted).

1283, 1287 (11th Cir. 2011) ("Regardless of its characterization as a state law matter, a claim will be re-characterized as federal in nature if it seeks relief under ERISA."). Thus, if McIntosh's Complaint includes any causes of action within the scope of the civil enforcement provisions of § 502(a), then his Complaint was properly removable to federal court pursuant to 28 U.S.C. §§ 1331 and 1441. *See Gables Ins. Recovery, Inc. v. Blue Cross and Blue Shield of Florida, Inc.*, 813 F.3d 1333, 1337 (11th Cir. 2015) ("[E]ven though pled as state common law claims, if Gables's causes of action are within the scope of the civil enforcement provisions of § 502(a), they are removable to federal court.") (citation and internal marks omitted).

The Supreme Court has articulated the test for complete preemption in the ERISA context in the following terms: "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *see also Conn. State Dental*, 591 F.3d at 1345 ("The *Davila* test thus requires two inquiries: (1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim."). The Court now applies the two-part *Davila* test to McIntosh's Complaint.

To evaluate whether the first prong of *Davila* is satisfied – that is, whether a plaintiff's claim could have been brought under ERISA § 502(a)(1)(B) – the Eleventh Circuit has examined whether "two requirements are met: (1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Conn. State Dental*, 591 F.3d at 1350. The Court readily concludes that McIntosh's claims fall within the scope of ERISA. After all, his Complaint centers on allegations that Prudential denied coverage promised to him under the terms of the NEA Life Insurance Plan, which is on its face an ERISA-regulated benefit plan.[3] That is sufficient to satisfy the "within the scope of ERISA" requirement for

---

[3] Plaintiff's Motion to Remand contests this determination, with McIntosh asserting in conclusory terms that he "is not now nor has ever been an ERISA based employee." (Doc. 4, ¶ 5.) That is not the legal test for determining whether a benefit plan is governed by ERISA. In addition to covering employer-sponsored plans, ERISA applies to "any employee benefit plan if it is established or maintained … by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(2). Plainly, the National Education Association ("NEA") is an "employee (Continued)

complete preemption. Indeed, § 502(a) of ERISA authorizes a plan participant or beneficiary to bring a civil suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Gables*, 813 F.3d at 1337 ("Section 502(a) creates a private right of action for a plan participant or beneficiary to recover benefits due"). McIntosh's Complaint seeks to do just that, so he plainly could have brought his claims under § 502(a)(1)(B).

Nor can there be any doubt about McIntosh's standing to sue under ERISA. The gravamen of McIntosh's Complaint is his desire to recover life insurance benefits that he claims are due and owing him by Prudential as claims administrator for the NEA Life Insurance Plan. This colorable claim for benefits gives rise to standing to sue under ERISA. *See, e.g., Conn. State Dental*, 591 F.3d at 1353 ("all one needs for standing under ERISA is a colorable claim for benefits, and the possibility of direct payment is enough to establish subject matter jurisdiction") (citation and internal marks omitted); *Gables*, 813 F.3d at 1338 (explaining that "[t]o maintain an action under ERISA, a plaintiff must have statutory standing, meaning the plaintiff has the right to make a claim under section 502(a)," and that ERISA permits "two categories of persons to sue for benefits: plan beneficiaries and plan participants"). As a plan participant who contends he was denied benefits owed him under the plan, McIntosh has statutory standing to sue.

The second prong of *Davila* provides that for ERISA complete preemption to exist, there must be "no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. All of McIntosh's claims asserted against Prudential necessarily depend on a

---

organization" within the ERISA definition of the term. *See* 29 U.S.C. § 1002(4) ("The term 'employee organization' means any labor union or any organization of any kind … in which employees participate and which exists for the purpose … of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships"); *Stinson v. Prudential Ins. Co. of America*, 857 F. Supp.2d 681, 688 (S.D. Ohio 2012) ("NEA is an 'employee organization' because it is a labor union that exists in part to deal with employers concerning an employee benefit plan."); *Stewart v. National Educ. Ass'n*, 404 F. Supp.2d 122, 126 (D.D.C. 2005) (concluding that "[t]he NEA is an 'employee organziation' under 29 U.S.C. § 1002(4)"). Documents attached to the Complaint confirm that the NEA Life Insurance Plan is an employee benefit plan established or maintained by the NEA, which is an employee organization for ERISA purposes. Under these circumstances, whether McIntosh perceives himself to be "an ERISA based employee" or not is of no consequence in the complete preemption analysis.

breach of the ERISA plan, which is the ultimate source of the right to payment invoked by McIntosh; therefore, such claims do not implicate any legal duty independent of the ERISA plan. *See, e.g., Davila*, 542 U.S. at 213 (finding "no other legal duty" test satisfied where defendants' potential liability "derives entirely from the particular rights and obligations established by the benefit plans," such that the plaintiffs' "causes of action are not entirely independent of the federally regulated contract itself"); *Gables*, 813 F.3d at 1338 ("Because Gables's third party beneficiary claims necessarily depend upon a breach of the ERISA plan, they do not arise out of a separate duty independent of the plan."); *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010) (finding no independent legal duty, notwithstanding plaintiffs' argument that their contract claims turned on state law rather than ERISA, because "the content of the claims necessarily requires the court to inquire into aspects of the ERISA plans," in that those claims concern "wrongfully denied benefits based on determinations of medical necessity" and "relate directly to the coverage afforded by the ERISA plans").  On this showing, the Court readily concludes that the claims asserted by McIntosh in the Complaint do not implicate legal duties independent of those imposed by ERISA or an ERISA plan's terms.

In light of the foregoing analysis, both prongs of the *Davila* test are satisfied here. McIntosh's claims asserted in the Complaint are thus completely preempted by ERISA, giving rise to federal question jurisdiction under 28 U.S.C. § 1331 and rendering this action properly removable to federal court.  Plaintiff's Motion to Remand is, therefore, **denied**.

### B. *Defendant's Motions.*

Contemporaneously with McIntosh's Motion to Remand, Prudential brings a pair of additional motions, as to which McIntosh has elected not to be heard.  First, Prudential submits a Motion to Dismiss (doc. 7) predicated on the notion that because McIntosh's claims are preempted by ERISA, the Complaint should be dismissed with prejudice in its entirety.  As Prudential sees it, whenever a plaintiff pleads state-law claims predicated on denial of benefits under an ERISA plan, preemption principles not only allow the defendant to remove the case to federal court, but also mandate the dismissal with prejudice of all claims post-removal, effectively stripping the plaintiff of any viable remedy for the alleged wrongful denial of benefits.  That is not how preemption works in the ERISA context.  "When a state-law claim is subject to ERISA superpreemption, that claim is not dismissed; rather, it is simply converted into a federal cause of action." *Hall v. Infirmary Health System*, 2007 WL 772560, *11 (S.D. Ala.

Mar. 8, 2007).[4]  In light of these and myriad other like-minded authorities, the Court finds that McIntosh's state-law causes of action asserted in the Complaint have been converted into ERISA claims arising under 29 U.S.C. § 1132(a)(1)(B).  They are now federal claims arising under ERISA and limited to ERISA remedies.  Nothing in the Motion to Dismiss would warrant dismissal of these recharacterized § 1132(a)(1)(B) claims; rather, Prudential seeks dismissal of the state-law iterations of those claims, which no longer exist, thanks to the alchemy of ERISA complete preemption.  Accordingly, the Motion to Dismiss (doc. 7) is **denied**.[5]

Second, Prudential has filed a Motion to Strike Plaintiff's Jury Demand (doc. 9) on the ground that no right to trial by jury exists in the ERISA context.  Binding authorities have so held.  *See, e.g., Howard v. Parisian, Inc.*, 807 F.2d 1560, 1566-67 (11th Cir. 1987) (concluding that there is no entitlement to trial by jury for actions arising under ERISA § 502(a)(1)(B) to recover benefits due under a plan).[6]  Plaintiff's only claims in this case are her recharacterized

---

[4] *See also Conn. State Dental*, 591 F.3d at 1343 (complete preemption "converts an ordinary state law claim into a statutory federal claim"); *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1178 (11th Cir. 2006) (where ERISA superpreemption exists, "state law claims that seek relief under ERISA are recharacterized as ERISA claims and arise under federal law"); *Ervast v. Flexible Products Co.*, 346 F.3d 1007, 1014 (11th Cir. 2003) ("Super preemption … ***recharacterizes*** the state law claim into a federal claim under § 1132.") (emphasis in original).

[5] Perhaps Prudential could have made a colorable argument that McIntosh should be required to replead his claims to confine them to the parameters of § 1132(a)(1)(B).  But that is not the relief Prudential requested; to the contrary, its Motion to Dismiss asked that the Complaint be dismissed with prejudice because the recharacterized ERISA claims set forth therein were nominally framed in state-law terms.  Even if Prudential had asked for an order of dismissal without prejudice, the Court would have declined to enter same.  The result of such an order would be that McIntosh would in all likelihood refile his Complaint using the terminology of § 502(a)(1)(B), an expensive, time-consuming and ultimately pointless gesture because all of McIntosh's existing claims have already been converted into ERISA claims by operation of the complete preemption doctrine.  In other words, in its current formulation, the Complaint already states claims for relief under ERISA pursuant to the mechanism of superpreemption / recharacterization.  There is nothing to be gained by forcing McIntosh to replead his Complaint to say expressly that which it already says by operation of the very legal principles invoked by Prudential in the Notice of Removal.

[6] *See also Hunt v. Hawthorne Associates, Inc.*, 119 F.3d 888, 907 (11th Cir. 1997) ("This position is consistent with our view that participants suing under section 502(a)(1)(B) are not entitled to a jury trial."); *Stewart v. KHD Deutz of America Corp.*, 75 F.3d 1522, 1527 (11th Cir. 1996) ("no Seventh Amendment right to a jury trial exists in actions brought pursuant to ERISA"); *Rolland v. Textron, Inc.*, 300 Fed.Appx. 635, 636 (11th Cir. Nov. 12, 2008) ("It is well-
(Continued)

ERISA causes of action, as to which she has no right to jury trial.  Therefore, the Motion to Strike is **granted** and plaintiff's jury demand is hereby **stricken**.

### III.     Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff's Motion to Remand (doc. 4) is **denied**;
2. Defendant's Motion to Dismiss (doc. 7) is **denied**;
3. Defendant's Motion to Strike Plaintiff's Jury Demand (doc. 9) is **granted**; and
4. Defendant is **ordered** to file an answer to the Complaint on or before **December 2, 2016**.

DONE and ORDERED this 18th day of November, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

settled that plaintiffs bringing ERISA claims are not entitled to jury trials under ERISA because such claims are equitable in nature.") (citations omitted).